IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LINDA FAYE TURNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:17cv105 |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Linda Faye Turner ("Turner") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433.  Turner alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate, and explain the weight given to, the opinions of the reviewing and consulting sources.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Turner's Motion for Summary Judgment (Dkt. No. 12) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Turner failed to demonstrate that she was disabled

under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Turner filed for DIB on October 18, 2012, claiming that her disability began on June 25, 2012, due to severe depression, anxiety, and social anxiety, as well as social, back, and learning problems, difficulty reading, difficulty understanding things, and panic attacks. R. 92, 185, 196, 205. Turner's date last insured was December 31, 2017; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB.[2] R. 8; Pl.'s Br. at 2, Dkt. No. 13; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Turner's applications at the initial and reconsideration levels of administrative review. R. 81–91, 93–113. On January 25, 2016, ALJ David S. Lewandowski held a hearing to consider Turner's claims for DIB. R. 46–80. Counsel represented Turner at the hearing, which included testimony from vocational expert Robert Jackson. On March 3, 2016, the ALJ entered his decision analyzing Turner's claims using the

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Turner was born on June 12, 1962, and was 53 years old on the date of the ALJ's opinion, making her a person "closely approaching advanced age" under the Act. R. 14, 196. Turner completed school through the seventh grade. R. 206.

2

familiar five-step process[3] and denying her claim for benefits. R. 8–27. The ALJ found that Turner was insured at the time of the disability onset and that she suffered from the severe impairments of borderline intellectual functioning, panic disorder with agoraphobia, major depressive disorder, chronic obstructive pulmonary disease ("COPD"), and thorocolumbar spine strain.[4] R. 10. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 11–12. In making this determination, the ALJ specifically considered Listings 1.04, 3.02, 12.02, 12.04, 12.05, and 12.06. R. 11–13. The ALJ concluded that Turner retained the residual functional capacity ("RFC") to perform a limited range of medium work. R. 14. Specifically, the ALJ found that Turner can only occasionally stoop, and climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to pulmonary irritants, temperature extremes, wetness, humidity, and industrial hazards. R. 14. Turner is able to understand, remember, and carry out simple instructions and perform simple, repetitive tasks, with only occasional interaction with coworkers and supervisors, and no interaction with the general public. Id. Turner can adapt to occasional changes in workplace setting, but cannot be required to travel, or perform reading or math as a job duty. Id.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] The ALJ also found that Turner had the non-severe impairments of bronchitis, allergies, hyperthyroidism, GI symptoms, kidney stones, peripheral neuropathy, and hypertension. R. 10–11.

The ALJ determined that Turner was unable to perform her past relevant work as a paint machine operator, but that she could perform other jobs that exist in significant numbers in the national economy, such as packer, laundry worker, and warehouse worker. R. 26. Turner appealed the ALJ's decision and the Appeals Council denied her request on January 27, 2017. R. 1–3.

## ANALYSIS

Turner alleges that the ALJ failed to properly evaluate, and explain the weight given to, the opinions of the reviewing and consulting sources, specifically Jeffrey Luckett, M.D., Howard S. Leizer, M.D., Carolina Bacani-Longa, M.D and William Humphries, M.D. Turner complains that these sources "opine to more significant limitations than found by the ALJ." Pl.'s Br. at 11, Dkt. No. 13. However, none of these sources found that Turner was unable to work.

When making an RFC assessment, the ALJ must assess every medical opinion received into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[5] 20 C.F.R. § 404.1527(c)(2). However, here, none of the opinions at issue are from Turner's treating sources. Further, the regulations require that the opinion of a consultative examining source should generally receive greater weight than a non-examining source. 20 CFR §§ 404.1527(c)(1), 404.1527(c)(2). Medical specialists who have examined a claimant generally are accorded more weight than a general medical examiner.

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 416.920(c)(a). However, the claim in the present case was filed before March 27, 2017, and the court has therefore analyzed Turner's claims pursuant to the rules in effect at the time of the ALJ's decision.

See Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sept. 4, 2014). In evaluating the weight to give the opinion of a consulting examiner, the ALJ must consider various factors, including the explanation and support for the opinion, as well as its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(c), 416.927(c).

### A. Medical Opinion – Dr. Luckett

Dr. Luckett completed a mental status examination on June 6, 2013, on referral from Disability Determination Services ("DDS"). R. 344–48. Dr. Luckett performed a Cognitive Capacity Screening Examination, Beck Depression Inventory, records review, and clinical interview. Turner scored in the severe range of depression; however, Dr. Luckett noted that her score of 43 seemed "a bit excessive given her clinical presentation in which there was no tearfulness." R. 347. Turner's intelligence was in the borderline range of intellectual functioning, with elementary use of judgment, logic, and reasoning and difficulty with math, specifically subtraction. Id. Dr. Luckett diagnosed panic disorder, dysthymic disorder, and borderline intellectual functioning. He found Turner could work, from a psychological standpoint, approximately 20–30 hours per week, and could perform simple and repetitive tasks without difficulty. R. 348.

Dr. Luckett completed a second mental status examination, as well as an intellectual assessment / achievement test on June 12, 2014, also on referral from DDS. 364–70. Dr. Luckett again diagnosed panic disorder with moderate agoraphobia, dysthymic disorder, and borderline intellectual functioning.[6] R. 369. Dr. Luckett found that Turner could perform simple and repetitive tasks and maintain regular attendance at work. R. 370. Dr. Luckett further found Turner could interact with coworkers and supervisors, but not with the public due to her panic disorder, and would have "some difficulty dealing with the usual stressors encountered in

---

[6] Dr. Luckett also diagnosed hypertension, GERD, and previous hyperthyroidism. R. 369.

5

competitive work. . . ." Id. However, "due to her physical issues," Dr. Luckett found she would "have difficulty completing a normal work day or work week without interruption." Id. This finding was based on Turner's self-reported ability to work only 15 minutes before resting for 15 minutes. Id.

Turner argues that the ALJ failed to properly evaluate Dr. Luckett's June 5, 2013 opinion, asserting that the ALJ's "finding of inconsistencies between [Dr. Luckett's June 2013 and June 2014 assessment] is simply not supported by the reports themselves" because in both assessments, Dr. Luckett found Turner could not work on a consistent basis. In his opinion, the ALJ adequately explained his decision to give "little weight" to Dr. Luckett's June 2013 opinion, finding that his "more recent assessment is more consistent with the record as a whole . . . ." R. 24. The ALJ gave "significant weight" to Dr. Luckett's mental functional assessment from the June 2014 examination, noting it was well supported by "clinical findings and other objective evidence, and consistent with the record as a whole." R. 23. Specifically, the ALJ noted the objective findings in support of Dr. Luckett's assessment included Turners "appropriate dress and hygiene, ability to respond to interview questions, clinical presentation and life accomplishments consistent with borderline intellectual functioning, cognitive testing score of 28 out of 30, and some signs of depression and anxiety" all suggesting "no worse than 'moderate' difficulties in any area" of mental functioning. R. 23. However, the ALJ gave "no weight" to Dr. Luckett's conclusions regarding Turner's physical functioning, on the grounds that "they appear to be based entirely on [Turner's] subjective reports of symptoms, and are outside his field of expertise." R. 23. Thus, the ALJ adequately explained why he refused to credit Dr. Luckett's opinion in the second assessment that Turner "would not be able to work on a consistent basis

6

due to her physical issues" which even Dr. Luckett conceded "would need to be evaluated by a physician." R. 370.

### B. Medical Opinions - Drs. Leizer and Bacani-Longa

In June 2013, state agency psychologist, Dr. Leizer reviewed the record at the initial level, finding limitations in understanding, memory, sustained concentration and persistence, social interaction, and adaptation. Dr. Leizer noted that Turner had a moderate limitation with short and simple directions, a marked limitation with detailed instructions, moderate limitations with concentration, persistence, or pace, and a moderate limitation with social interaction and adaption. R. 87–90. In July 2013, state agency doctor Richard Surrusco, M.D. reviewed the medical evidence and found that Turner did not have any severe physical impairments.

In June 2014, state agency psychologist, Richard Luck, Ph.D., reviewed the record at the reconsideration level. Dr. Luck found Turner's ability to remember short and simple instructions was not significantly limited, and she had only moderate limitations with regard to detailed instructions. R. 108. However, like Dr. Leizer, Dr. Luck found moderate limitations in concentration, persistence, and pace, as well as social interaction with the general public and adaptation. R. 109. In June 2014, state agency doctor Dr. Bacani-Longa, reviewed the record at the reconsideration level and found Turner was capable of performing a limited range of medium work. R. 106–108.

Turner argues that the ALJ failed to properly evaluate Dr. Leizer's June 2013 opinion, stating that Dr. Liezer's limitations were "more significant" than the limitations found by the ALJ. Pl.'s Br. at 13, Dkt. No. 13. The ALJ gave "little weight" to Dr. Leizer's opinion, writing that his assessment is not consistent with the more recent medical evidence of record including "several mental status examination showing some depression and/or anxiety, but otherwise

7

normal findings, as well as the lack of any inpatient psychiatric treatment." R. 24  The ALJ notes that Turner's "main form of treatment to date has been medication management under the supervision of general practitioners" and her mental status never deteriorated to the point that she required inpatient or emergency psychiatric care, despite her "somewhat infrequent mental health treatment."[7] R. 22. As the Commissioner points out, the ALJ's RFC assessment was in fact generally consistent with Dr. Leizer's findings, where Dr. Leizer concluded that Turner had the RFC to engage in "simple, non-stressful tasks at competitive levels which do not require direct contact with the public, or significant collaboration with coworkers." R. 89.  Though Turner concedes that she has not had inpatient psychiatric treatment, she points out that her treatment notes from September 2014, and March, June and August 2015, indicate that she appeared anxious, nervous, tearful, and depressed.[8] Pl.'s Br. at 13, Dkt. No. 13; R. 403, 418, 428. Turner also emphasizes Dr. Ely's assessment of major depressive disorder and panic disorder with agoraphobia. R. 426. However, the ALJ appropriately considered the medical opinions and the medical record, including the September 2014, and May, June, and August 2015 records cited by Turner. R. 19–21. Indeed, the ALJ found severe impairments of panic disorder and depression, and imposed restrictions in the RFC to limit Turner's interactions with coworkers and supervisors, and to have no interaction with the general public. R. 14. Likewise, though Turner complains that "the single area of marked limitation in traveling to unfamiliar places would result in far great[er] limits than given by the ALJ," in fact, the ALJ limited Turner's RFC such that she cannot be required to travel as a job duty." Id. The ALJ gave significant weight to state

---

[7] In her June 2015 visit to Tri-Area Community Health, Turner indicated that, while she was not currently seeing a counselor or psychiatrist, she would like to see a counselor "in the future when her finances improve." R. 418.

[8] In Turner's June 2015 appointment her treatment notes also indicate that her medications are helping her anxiety, and that she has stopped "driving and having panic attacks." R. 418.

agency psychological consultant Richard Luck, Ph.D., noting that he had the benefit of reviewing more updated records than Dr. Leizer. R. 23.

Likewise, Turner argues that the ALJ failed to address inconsistencies between Dr. Bacani-Longa's June 2014 opinion and the ALJ's RFC finding. Specifically, Turner points out that Dr. Bacani-Longa found limitations in pushing and/or pulling with the left lower extremity, which the ALJ did not include in his RFC. Pl.'s Br. at 14, Dkt. No. 13. While Dr. Bacani Longa did note a limitation for pushing and pulling in Turner's left lower extremities, she also concluded that "there are no significant physical finding what would limit Turner's ability to work" and found her capable of a limited range of light work. Further, by according significant weight to a medical opinion, an ALJ is not bound to adopt that opinion wholesale. See Cox v. Colvin, No. 4:15-CV-00137-D, 2016 WL 4595927, at *7 (E.D.N.C. July 19, 2016), adopted by, No. 4:15-CV-137-D, 2016 WL 4595989 (E.D.N.C. Sept. 2, 2016); see also Armentrout v. Astrue, No. 3:10CV504, 2011 WL 4625931, at *7 (E.D. Va. June 2, 2011) ("While the ALJ assigned 'significant' probative weight to the opinion, the ALJ was not then required to adopt every limitation and incorporate them into the RFC analysis."), adopted by 2011 WL 4625912 (E.D. Va. Oct. 3, 2011). Here, the ALJ appropriately weighed all of the medical evidence in reaching his RFC determination, rather than adopting only one doctor's opinion in entirety.

### C. Medical Opinion - Dr. Humphries

Dr. Humphries performed a physical consultative examination on May 23, 2014, on referral from DDS. R. 359–62. Turner complained to Dr. Humphries of low back pain and shortness of breath, but indicated her chief medical complaint was "my nerves." R. 359. Turner reported she could not walk even 50 yards on level ground without stopping due to pain. Id. On examination, Turner had a tender back and neck, occasional tremors in the head, neck, and hand,

9

with normal gait and normal strength in four extremities. R. 360. Dr. Humphries diagnosed hypertension, chronic thoracolumbar strain with peripheral neuropathy, left lower extremity, and mild COPD. R. 361. He further found that she was capable of a limited range of light work. Id.

Turner's argument that the ALJ failed to properly evaluate Dr. Humphries's opinion is not well taken. The ALJ gave Dr. Humphries opinion no weight, writing that a limitation to light work was not warranted considering the objective findings in Dr. Humphries's report, specifically "only slight range of motion deficits, negative straight raise, normal muscle tone, nornal motor strength, and normal gait." R. 24. Further, the ALJ found that Dr. Humphries's diagnosis of peripheral neuropathy lacked objective support, noting that no other doctor, treating or examining, shared such diagnosis. Id. Instead, the ALJ determined that the state agency doctors on reconsideration were more reliable. Id. As such, the ALJ sufficiently explained his assessment of Dr. Humphries's opinion, which was adequately supported by the record.

Accordingly, I find that the ALJ properly evaluated and explained the weight given to the opinions of the reviewing and consulting sources and that substantial evidence supports the ALJ's decision.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to

this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

                                 Entered: July 25, 2018

                                 *Robert S. Ballou*

                                 Robert S. Ballou
                                 United States Magistrate Judge